IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff, | § |
| | § Criminal No. 3:12-CR-318-D(2) |
| VS. | § |
| | § |
| KARI LYNN CASH, | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION
AND ORDER

Defendant Kari Lynn Cash ("Cash") has filed several pretrial motions that the court decides by this memorandum opinion and order. The court also addresses the government's request for access to an *ex parte* document that Cash has filed in support of her motion to sever.[1]

I

*Motion for Severance*

The court first considers Cash's motion for severance.

A

Cash contends that her trial should be severed from her codefendants' because (1) she

---

[1]On November 21, 2014, eight of the ten defendants filed an unopposed motion for continuance of trial. Any deadline included in this memorandum opinion and order that is set for a specific date is based on the current trial setting of February 2, 2015. If the continuance motion is granted, the court will reset any specific date based on the new trial setting. If the court denies the continuance motion, any such specific date will continue to apply.

will be deprived of critical exculpatory evidence in the form of testimony from codefendant Fabian Fleifel ("Fleifel"), her former boyfriend; (2) she will be prejudiced by the spillover effect of inadmissible evidence relating to other codefendants' conduct; and (3) her defense is antagonistic to the defense of other codefendants.

B

The oft-cited general rule in this circuit is that codefendants who are indicted together should be tried together. *See, e.g., United States v. Lopez*, 979 F.2d 1024, 1035 (5th Cir. 1992) (citing *United States v. Arzola-Amaya*, 867 F.2d 1504, 1516 (5th Cir. 1989)). "Joinder is the rule rather than the exception[.]" *United States v. Mikolajczyk*, 137 F.3d 237, 240 (5th Cir. 1998). In particular, codefendants charged with conspiracy should be tried together. *See United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993); *see also United States v. Featherston*, 949 F.2d 770, 773 (5th Cir. 1991) ("This rule is especially strong when the defendants are charged with committing the same conspiracy."). "A district court should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt." *United States v. Neal*, 27 F.3d 1035, 1045 (5th Cir. 1994) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (internal quotation marks omitted)). A defendant must demonstrate that she will receive an unfair trial and suffer compelling prejudice against which the court will be unable to afford protection. *See United States v. Piaget*, 915 F.2d 138, 142 (5th Cir. 1990).

To decide Cash's motion for severance, the court must balance the potential prejudice

to her against the public interest in joint trials. *See United States v. Oliver*, 2008 WL 2511751, at *1 (N.D. Tex. June 23, 2008) (Fitzwater, C.J.) (citing *United States v. Berkowitz*, 662 F.2d 1127, 1132 (5th Cir. Unit B Dec. 1981)). To obtain a trial severance, Cash must do more than show some prejudice; she must demonstrate that she will receive an unfair trial and suffer specific and compelling prejudice against which the court cannot protect her. *See United States v. Mitchell*, 484 F.3d 762, 775 (5th Cir. 2007).

C

1

Cash moves for a severance on the ground that a joint trial with her codefendants will deprive her of critical exculpatory evidence. She maintains that codefendant Fleifel would not testify at a joint trial, but, were she tried separately, he would testify that she lacked the requisite intent or knowledge to be part of the alleged conspiracy. She therefore contends that, because Fleifel cannot be compelled to testify at a joint trial, she will be deprived of his exculpatory testimony unless her case is severed.

In support of her motion, Cash has submitted an *ex parte* declaration from Fleifel. Although the court granted Cash leave to file the *ex parte* declaration, it concludes that it is necessary for purposes of deciding Cash's severance motion to disclose the part that the court deems dispositive in deciding the motion.[2] In the declaration, Fleifel states: "If Ms. Cash was

---

[2]The government requests that it be given access to the *ex parte* declaration, contending that it cannot fully respond to Cash's severance motion because it does not know the substance of the testimony that Fleifel has offered. Because the court concludes that Cash's motion to sever should be denied, it denies without prejudice as moot the

- 3 -

tried in a separate case after the instant case was tried, I would agree to testify on her behalf regarding her lack of knowledge and intent with regard to the alleged conspiracy, and to the limited if any role that she played." Fleifel *Ex parte* Decl. ¶ 1.

2

> In order to establish a prima facie case warranting severance for the purpose of introducing exculpatory testimony of a co-defendant, [Cash] must show: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant would in fact testify if a severance was granted.

*United States v. Broussard*, 80 F.3d 1025, 1037 (5th Cir. 1996) (citing *United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990)). The court need not address the first three factors because Cash has failed to make the requisite showing on the fourth. To meet the fourth prong, Cash must demonstrate that Fleifel's offer to testify is unequivocal. *See id.* at 1038; *see also United States v. Manges*, 110 F.3d 1162, 1175-76 (5th Cir. 1997); *United States v. Pham*, 201 Fed. Appx. 236, 238 (5th Cir. 2006). Where a codefendant's offer to testify is contingent upon his trial's occurring before the defendant's, it is not an unequivocal offer to testify. *See Broussard*, 80 F.3d at 1038 (citing *United States v. McDonald*, 837 F.2d 1287, 1290 (5th Cir. 1988) (holding that codefendant's offer to testify, but only if he were granted immunity or acquitted at his own trial, was insufficient to show that codefendant would in fact testify); *United States v. Alejandro*, 527 F.2d 423, 428 (5th Cir. 1976) (holding that severance not required where codefendant's testimony would not exculpate defendant

---

government's request for access to Fleifel's *ex parte* declaration.

contrary to codefendant's own penal interest); *United States v. Cochran*, 499 F.2d 380, 391-92 (5th Cir. 1974) (holding that severance was not required where codefendants agreed to testify only if no charges were pending against them)). It is the district court's prerogative to determine in what order codefendants will be tried, and a codefendant's attempt to condition his agreement to testify on the order in which the severed cases will be tried is an attempt to usurp the district court's discretion to make such a determination. *Id.* (citing *Byrd v. Wainright*, 428 F.2d 1017, 1022 (5th Cir. 1970); *United States v. Blanco*, 844 F.2d 344, 353 (6th Cir. 1988)).

In his declaration, Fleifel clearly conditions his willingness to testify on Cash's behalf on the requirement that she be "tried in a separate case after the instant case [is] tried." Fleifel *Ex parte* Decl. ¶ 1. Cash has therefore failed to demonstrate that Fleifel's offer to testify is unequivocal. *See Manges*, 110 F.3d at 1175 (holding that "[codefendant's] pre-trial offer to testify on [defendant's] behalf was conditioned upon a demand that he be tried first, and thus was not unequivocal, as required by the fourth prong of the *Broussard* test"). Cash cannot effectively dictate that a severance be granted, and that Fleifel be tried before Cash is, so that she can secure his testimony at her trial. Accordingly, the court denies Cash's motion for severance on this ground.

D

Cash next moves for a severance on the ground that the spillover effect of inadmissible evidence relating to the conduct of her codefendants will be unduly prejudicial. She maintains that the weight of the evidence against her is *de minimis* compared to evidence

against her codefendants, and that there is a strong likelihood that the jury would convict her solely because of her association with other defendants.

As noted above, the rule in this circuit is that codefendants who are indicted together should be tried together. *See, e.g., Lopez*, 979 F.2d at 1035.

> In order to obtain severance under Rule 14, the [defendant has] the difficult burden of proving that [she] will suffer the most compelling prejudice from continued joinder. . . . The test for such prejudice is [w]hether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct.

*United States v. Zicree*, 605 F.2d 1381, 1388-89 (5th Cir. 1979) (quoting *United States v. Wasson*, 568 F.2d 1214, 1222 (5th Cir. 1978)). Even when the evidence in a case is "both massive and complex," the court can "explicitly instruct[] the jury to consider each offense separately and each defendant individually." *United States v. Whitfield*, 590 F.3d 325, 356 (5th Cir. 2009) (quoting *United States v. Manzella*, 782 F.2d 533, 540 (5th Cir. 1986) (internal quotation marks omitted)). "Limiting instructions such as these are generally 'sufficient to prevent the threat of prejudice resulting from unsevered trials.'" *Id.* (quoting *United States v. Massey*, 827 F.2d 995, 1005 (5th Cir. 1987)).

Moreover, "prejudice that may result from the introduction of evidence at trial relating to co-conspirators that is irrelevant to a particular defendant . . . does not require severance[.]" *United States v. Potashnik*, 2008 WL 5272807, at *8 (N.D. Tex. Dec. 17, 2008) (Lynn, J.) (citing *United States v. Krenning*, 93 F.3d 1257, 1267 (5th Cir. 1996)).

- 6 -

"Similarly, a quantitative disparity in the *amount* of evidence offered against one defendant in relation to other co-defendants is also normally insufficient to warrant severance under Rule 14[.]" *Id.* (citing *Pofahl*, 990 F.2d at 1482). Even if more damaging evidence is presented against one defendant than another, severance is not the proper means of confining "spillover" evidence. "The pernicious effect of cumulation is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the government." *United States v. Harrelson*, 754 F.2d 1153, 1175 (5th Cir. 1985) (quoting *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976) (alterations omitted)); *see also Piaget*, 915 F.2d at 142. The decision to grant a severance under Rule 14 on the ground that the joinder of the defendants prejudices one defendant lies within the district court's discretion. *Neal*, 27 F.3d at 1045.

Cash has not demonstrated that the court should vary from the normal rule that defendants charged with the same conspiracy should be tried together. She has not carried her "difficult burden of proving that [she] will suffer the most compelling prejudice from continued joinder[.]" *Zicree*, 605 F.2d at 1388-89. Cash offers various reasons to support her overarching contention that the weight of the evidence against her is *de minimis* compared to the evidence against her codefendants, and that she will be prejudiced by a joint trial because the jury will likely find her guilty by association. But her reasoning does not adequately address the fact that the court can instruct the jury that it is to consider separately the evidence offered against each defendant. *See, e.g., Berkowitz*, 662 F.2d at 1135. If the jury can keep separate the evidence that is relevant to each defendant, even if the task is

difficult, and render a fair and impartial verdict as to each defendant, a severance should not be granted. *See Rocha*, 916 F.2d at 228-29. Cash has not demonstrated that, under all the circumstances of this particular case, the jury cannot, as a practical matter, follow the court's admonitory instructions and collate and appraise the independent evidence against Cash. Because Cash has failed to demonstrate that the jury will not be able to compartmentalize the evidence against the various defendants or to apply that evidence in accordance with the jury charge—in which the court anticipates that the jury will be instructed to consider only the evidence offered against the defendant in question—she has failed to demonstrate that the court should grant a severance.

E

Finally, Cash argues that a separate trial is warranted because her defense is antagonistic to that of her codefendants. She contends that she does not know whether any other codefendant is guilty of a crime, but if the allegations of the alleged conspiracy are true, others are responsible, not she; that she simply executed limited acts in isolation under the request of her then-boyfriend, Fleifel; that she never intended to commit fraud; and that she had no knowledge of the alleged fraud that the government asserts, she trusted Fleifel and relied on the fact that what he told her was true and what he requested of her was in good faith, and that she was not part of a scheme to fraudulently obtain money and should not be held accountable for acts over which she had no control.

"[J]oint defendants face a heavy burden in demonstrating to a district court that antagonistic defenses warrant granting a severance motion." *United States v. Daniels*, 281

F.3d 168, 177 (5th Cir. 2002) (citing *Zafiro*, 506 U.S. 534). "Mutually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538. "The defenses must be so diametrically opposed that 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.'" *Daniels*, 281 F.3d at 177 (quoting *Berkowitz*, 662 F.2d at 1134) (alterations in original)). "Even when such a conflict is present, giving rise to the risk of prejudice, the district court should take into account the public interests in judicial economy and the administration of justice served by joint trials and the possibility that limiting instructions or other less drastic measures will suffice to cure any risk of prejudice." *Id.*

Cash has not met her burden of establishing a mutually antagonistic defense. In fact, Cash has failed to demonstrate that she is relying on a defense that is antagonistic to the defense of a codefendant. Essentially, Cash is arguing that, assuming some codefendants are guilty as charged, she is not. She does not point to any defense of hers (including that she is not criminally culpable) that is so diametrically opposed to that of a codefendant that the jury, in order to believe her defense, must necessarily disbelieve the codefendant's defense. And even if the court assumes that there is some risk of prejudice, Cash has failed to demonstrate that the court cannot give sufficient admonitory instructions to the jury to mitigate the risk of prejudice.

Given Cash's failure to demonstrate antagonistic defenses and the fact that the court will appropriately instruct the jury to consider each defendant's case separately, the court is satisfied that whatever risk of prejudice there is can be cured by the court's instructions.

Accordingly, Cash's motion for severance is denied.

II

*Motion for Disclosure of Rule 404(b) Evidence and its Purpose*

Cash moves the court to require the government to disclose any evidence that it intends to offer at trial under Fed. R. Evid. 404(b), and to state the general purpose for which any such evidence is offered.[3] She also requests that the court convene an evidentiary hearing before trial to determine the admissibility of any Rule 404(b) evidence that the government intends to offer at trial.

The government responds that it will comply with Cash's disclosure request to the extent required by Rule 404(b)—that is, that it will provide a statement of the general nature of the evidence and the purpose for which it is being offered—and it states that it will do so at the time pretrial material is due under the court's scheduling order, i.e., 14 days prior to trial. The government opposes the motion to the extent Cash's request exceeds the scope of Rule 404(b). It also opposes Cash's request for a pretrial hearing, although it does not oppose a brief, appropriate hearing outside the jury's presence during trial.

To the extent the government has agreed to comply with its obligations under Rule 404(b), Cash's motion is denied as moot. To the extent Cash's request exceeds what Rule 404(b) requires, the motion is denied. The government must provide the notice required by Rule 404(b) no later than 14 days before the date the trial commences (i.e., Tuesday, January

---

[3]Although Cash labels the motion as "unopposed," it appears that the government opposes the motion, at least in part.

20, 2015, because 14 days before February 2, 2015 is a federal holiday).

The court denies Cash's request for a pretrial evidentiary hearing to determine the admissibility of Rule 404(b) evidence. A pretrial hearing is not required, and a ruling on the admissibility of Rule 404(b) evidence often requires that the court assess proof offered, or positions taken, by a party during the trial itself. Instead, the court orders that the government not disclose Rule 404(b) evidence to the jury until it has obtained a ruling outside the jury's presence that the evidence is admissible.

Except to the extent the court is granting Cash's motion for disclosure of Rule 404(b) evidence and its purpose, the motion is denied.

III

*Motion for Evidence Favorable to Defendant*

Cash moves the court to order the government to disclose any evidence that is exculpatory or favorable to her and that could lead to evidence that is exculpatory or favorable. She identifies 15 particular categories that she maintains would be exculpatory. Cash also requests that the government's attorney be ordered to examine her files and to question government agents, informants, or other persons working with the government in this case regarding their knowledge of any such evidence or materials. She also requests that she be allowed to question the government's attorney and the government's agents concerning their knowledge of exculpatory evidence and diligence in attempting to locate such evidence.

In response, the government states that it will comply fully with its obligations under

Fed. R. Crim. P. 12(b)(4), 16, and 26.2, the Jencks Act, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny. The government objects to the motion to the extent that Cash's requests exceed the scope of any disclosures required by law, or place a greater burden on the government than the law provides.

To the extent Cash requests discovery that the government is required, or has offered, to disclose under Rules 12(b)(4), 16, and 26.2, the Jencks Act, 18 U.S.C. § 3500, *Brady* and its progeny, and/or *Giglio* and its progeny, the motion is denied as moot. The government will be expected to comply with its obligations under *Brady*, *Giglio*, and the Jencks Act, and these rules. To the extent Cash's requests exceed what is required by these authorities, the motion is denied. The government need not produce Jencks Act materials or statements discoverable under Rule 26.2 until the deadline specified *infra* at § VIII.

IV

*Motion for Early Designation of Government's Expert Witnesses*

Cash moves the court to require the government to designate no later than January 5, 2015 whom, or at least what category of expert witness, the government intends to call in its case-in-chief, the credentials of such expert witness, any documentation that the expert has reviewed to give his opinion, and a general summary of the testimony sought from the expert. The government responds that it does not oppose Cash's motion. It agrees to designate its experts, if any, by January 5, 2015. It also requests that the court order Cash to designate her experts by January 12, 2015.

Because the government does not oppose Cash's motion, the court denies the motion as moot, on the assumption that the government will comply with its Rule 16(a)(1)(G) expert obligations no later than January 5, 2015.

The court grants the government's request that Cash be ordered to designate her experts, except that the court sets January 20, 2015 as the deadline for her to make any such designation.

V

*Motion for Disclosure of Plea Bargain Agreements*

Cash moves the court to require the government to disclose plea agreements, and/or drafts thereof, between the government and any person who will be a witness for the government.[4] She also requests related information regarding witnesses who have reached other understandings with the government in exchange for their testimony. Cash specifically requests that the government be required to produce contemporaneous notes made by case agents during proffer sessions or notes or reports of interviews of cooperating witnesses.

The government responds that it will comply with Cash's requests by producing all plea agreement documents and any documents reflecting promises made to testifying witnesses. It also identifies two other cases in which coconspirators charged in the instant case are also charged. The government opposes the motion to the extent Cash seeks disclosure beyond that to which she is legally entitled by law or places a greater burden on

---

[4] Although Cash labels the motion as "unopposed," it appears that the government opposes the motion, at least in part.

- 13 -

the government than the law provides. It states that it will comply with its obligations under *Giglio* and its progeny, and all court orders.

To the extent the government has agreed to comply with its obligations under *Brady* and *Giglio*, the court denies the motion as moot. To the extent Cash's motion exceeds the government's obligations under *Brady* and *Giglio*, the motion is denied.

Regarding Cash's requests for contemporaneous notes made by agents during proffer sessions or notes or reports of interviews of cooperating witnesses, the court orders the government to disclose any agent notes to the extent required to do so by *Brady* or *Giglio*. Additionally, the government must disclose any material that qualifies as a "statement" under the Jencks Act or Rule 26.2(f). To the extent Cash's motion seeks more than that to which the government has agreed, or that exceeds the government's obligations under *Brady* or *Giglio*, the Jencks Act, or Rule 26.2, the motion is denied. The government need not produce any discoverable statements covered by the Jencks Act or Rule 26.2 until the deadline specified *infra* at § VIII.

VI

*Motion for Early Production of Statements of Witnesses*

Cash moves the court to require the government to produce 18 U.S.C. § 3500 witness statements—i.e., Jencks Act statements—14 days prior to trial. In response, the government agrees to fully comply with 18 U.S.C. § 3500, but it opposes any requirement that it disclose such materials sooner than one day before the witness to whom the material pertains testifies, citing the long-standing practice in the Dallas Division of this court.

18 U.S.C. § 3500(b) (which pertains to the government) and Rule 26.2(a) (which pertains to the government and to a defendant) do not authorize the court to compel a party to produce a witness statement any earlier than after a witness has testified on direct examination. In this district, however, it is the custom for Jencks Act-type materials, including statements under Rule 26.2(a), to be disclosed at the end of the business day preceding the date on which the defendant will begin her cross-examination of a witness. Therefore, the court orders the government to comply with the Jencks Act and Rule 26.2(a) no later than the business day preceding the date on which Cash will begin her cross-examination of the witness whose statement is being produced. To the extent Cash requests greater relief, the motion is denied.

VII

*Motion for Hearing on Admissibility of Statements
Made by Unavailable Witnesses or Alleged Coconspirators*

Cash moves for a pretrial hearing to determine the admissibility of any statements made by unavailable witnesses or alleged coconspirators. Although she refers generally to unavailable witnesses, she focuses in her motion on evidence that she maintains the government intends to offer under Fed. R. Evid. 801(d)(2)(E), the coconspirator exception to the hearsay rule. Cash requests that the court order that a pretrial hearing[5] be conducted to determine that such evidence is admissible before it is introduced at trial.

---

[5]This type of hearing is referred to as a *James* hearing. *See United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc).

The government responds that a separate hearing is not mandatory under *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc); that the court retains the discretion to decide whether to conduct such a hearing; and that the court is authorized to, and should, carry its ruling on the existence of a conspiracy, the identities of the members of the conspiracy, and the admissibility of coconspirator statements against certain defendants, subject to the government's later connection in its case-in-chief.

In *James* the Fifth Circuit held that coconspirator statements are admissible as non-hearsay under Rule 801(d)(2)(E) only if substantial independent evidence of a conspiracy exists. *James*, 590 F.2d at 581. But "[a] *James* hearing, conducted outside the presence of the jury, is *one potential method* by which the district court may ensure [that] the Government can satisfy the predicate facts needed to prove the conspiracy independent of the statements." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001) (emphasis added). Deciding "[w]hether a *James* hearing is necessary in a particular case [is] within the discretion of the trial court." *Id.* "*James* has *never required* a hearing outside the presence of the jury." *United States v. Fragoso*, 978 F.2d 896, 899 (5th Cir. 1992) (emphasis added). In this case, the court concludes that convening such a hearing would be burdensome and effectively result in a mini-trial of potentially considerable length, given that one of Cash's requests is that the government be required to prove at the hearing the existence of a conspiracy and of Cash's participation in it at the time the statement was allegedly made. Presumably, Cash would insist that the government make this showing through the witnesses whom the government intends to call to testify at trial. The government is not obligated in

a conspiracy case involving Rule 801(d)(2)(E) evidence to participate in a form of elaborate pretrial discovery conducted under the guise of requiring that it satisfy the predicate facts needed to prove the admissibility of coconspirator statements. Accordingly, the court denies the motion.

The court recognizes that, during the trial, it must "whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it [pursuant to Rule 801(d)(2)(E)] before admitting declarations of a coconspirator." *Fragoso*, 978 F.2d at 900. In complying with Rule 801(d)(2)(E), the court must determine whether there is sufficient "'evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy.'" *Id.* (quoting *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (internal quotation marks omitted)). The court will adhere to these requirements in trying this case.

## VIII

Except to the extent that the Jencks Act and Rule 26.2(a) permit later disclosure, the government must comply no later than December 29, 2014 with its disclosure and discovery obligations imposed by this memorandum opinion and order and by the government's agreement to produce what Cash has requested. Concerning material that qualifies as a "statement" under the Jencks Act or Rule 26.2(f), in accordance with the custom in this district, the government must comply with the Jencks Act and Rule 26.2(a) no later than the

business day preceding the date on which Cash will begin her cross-examination of the witness whose statement is being produced.

**SO ORDERED**.

November 24, 2014.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　SIDNEY A. FITZWATER
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE